UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-CR-20503-GAYLES/TORRES

UNITED STATES OF AMERICA,

    Plaintiff,

v.

BRIANA SANDERS,

    Defendant.
_____/

**REPORT AND RECOMMENDATION
ON DEFENDANT'S MOTION TO DISMISS INDICTMENT**

This matter is before the Court on Defendant Briana Sanders' motion to dismiss the indictment for violation of her Sixth Amendment right to a speedy trial (the "Motion"). [D.E. 37]. The Motion is fully briefed, and it has been referred to the undersigned for a report and recommendation. [D.E. 38, 43, 46]. Accordingly, the Motion is now ripe for disposition. Having reviewed the briefing, the record, and otherwise being fully advised in the premises, the Court recommends that the Motion be **DENIED**.

### *I.     FACTUAL BACKGROUND*

According to the indictment in this case, Sanders allegedly engaged in the unauthorized use of an access device, the use of a counterfeit access device, and aggravated identity theft in January and March 2021. Following an incident at the Aventura Mall in March 2021, Sanders was arrested and charged by the State of Florida for the alleged conduct that forms the basis of Sanders' federal indictment.

While Sanders was out on bond during her pending state case in the summer of 2021, a detective from the Aventura Police Department contacted Sanders' lawyer at the Miami-Dade Public Defender's Office to advise that a federal indictment would be forthcoming and therefore Sanders' voluntary surrender would be welcomed by federal authorities. Sanders' lawyer was cooperative with law enforcement but advised that she was unable to locate Sanders at that time.

On September 30, 2021, a federal grand jury returned the sealed four-count indictment that forms the basis of the case at bar. Two days before the return of that indictment, during a status conference in Sanders' parallel state case, Judge Hersch set a hearing regarding Sanders' charges for 9:00 AM on November 19, 2021. *See* Case No. F21005573A, Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, D.E. 85, Sept. 28, 2021. Sanders submits – and importantly the Government does not dispute – that she was making appearances in her state case over Zoom. [D.E. 46]. Thus, even though Sanders' appearances on Zoom were a matter of public record on certain days (e.g., September 28, 2021), it seems that federal law enforcement never attempted to contact Sanders directly

while she was answering charges that mirrored those for which federal authorities sought her seizure. [D.E. 5]. The state case was ultimately dismissed after a hearing held on November 19, 2021. *See id*. at D.E. 100.

Instead of looking for Sanders during one of her court appearances on a particular date, federal investigators relied upon queries in law enforcement databases to identify addresses that may have been associated with Sanders. The results of these queries caused law enforcement personnel to search for Sanders in four different states: Florida, Michigan, Arkansas, and North Carolina. But aside from contacting Sanders' mother in Michigan, these search efforts ultimately proved fruitless. For more than a year, Special Agents from the United States Secret Service periodically checked in with Sanders' mother about Sanders' pending indictment and outstanding warrant. Nothing in the record evidences that Sanders' mother ever informed Sanders about her federal case; regardless, these contacts between law enforcement and Sanders' mother never led to Sanders' arrest.

It was not until January 20, 2023, that federal investigators stumbled upon a viable lead regarding Sanders' location. It was at that time that the United States Secret Service learned that a Ford Mustang, which was believed to be associated with Sanders, was spotted in Miramar, Florida. A subsequent surveillance operation of that Mustang resulted in Sanders' arrest.

On January 25, 2023, Sanders was arraigned on the now-unsealed indictment. Her trial was initially scheduled for March 27, 2023, but it was postponed at Sanders' request because the Government did not make its first discovery production until

March 23, 2023. Since then, the trial has been postponed a few more times due to the parties' ongoing attempts to resolve this matter without a jury trial. Sanders filed the pending motion on September 11, 2023, in which she alleges that her right to speedy trial was violated by the delay in prosecuting the federal action.

## II. ANALYSIS

The Sixth Amendment to the Constitution of the United States guarantees that, in all criminal prosecutions, the accused shall enjoy the right to a "speedy" and public trial. U.S. CONST. amend. VI. The right to a speedy trial attaches when the defendant is arrested or indicted, whichever comes first, and continues until the date of trial. *United States v. Gonzalez*, 671 F.2d 441, 444 (11th Cir. 1982).

In *Barker*, the Supreme Court established a four-prong test for determining whether a defendant's right to a speedy trial has been violated. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). The four factors are: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the speedy trial right; and (4) the prejudice to the defendant as a result of the delay. *Id*.

None of the four *Barker* factors is "a necessary or sufficient condition" to the finding of a speedy trial violation. *Id*. at 533. Rather, they are "related factors" that must be considered together "with such other circumstances as may be relevant." *Id*. Nevertheless, a *Barker* analysis "must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution." *Id*.; *see United States v. Oliva*, 909 F.3d 1292, 1303 (11th Cir. 2018) (citing *United States v. Villarreal*, 613 F.3d 1344, 1349 (11th Cir. 2010)) ("[c]ourts are nevertheless mindful

that 'dismissing an indictment is an extraordinary remedy' that 'is not one to be given to defendants each time the Government's conduct unintentionally causes delay.'").

To trigger a *Barker* analysis, the defendant must allege that the length of the delay between the indictment and trial is presumptively prejudicial. *Doggett v. United States*, 505 U.S. 647, 652 (1992). Delays exceeding one year are generally found to be presumptively prejudicial. *United States v. Ingram*, 446 F.3d 1332, 1336 (11th Cir. 2006). For purposes of the *Barker* analysis, the delay is often measured "until trial" or "until the pretrial motion to dismiss on this ground is determined." *Villarreal*, 613 F.3d at 1350 (quoting 5 Wayne R. LaFave, Criminal Procedure § 18.2(d) (3d ed. 2007)).

Here, the Court finds – and the Government concedes – that a *Barker* analysis is warranted because approximately 18 months elapsed between the return of the indictment and Sanders' initial trial date, qualifying the delay of trial as presumptively prejudicial. *See id.* Accordingly, the *Barker* factors must be examined in turn.

    A.    *The length of the delay.*

The Supreme Court has recognized that the first *Barker* factor is a "double enquiry" because it constitutes a threshold consideration for the Court that, if necessary, must be subsequently weighed and balanced against the other factors discussed in the analysis. *See Doggett*, 505 U.S. at 651. Although the Government concedes that the post-indictment delay triggers a *Barker* analysis, it disputes the weight that should be attached to the first *Barker* factor. *See United States v.*

5

*Contreras*, 589 F. Supp. 3d 1272, 1278 (S.D. Fla. 2022) (quoting *Oliva*, 909 F.3d at 1298) ("Just because the length of the delay is sufficient to trigger the Barker analysis, however, 'does not necessarily mean that factor weighs heavily against the Government; the two inquiries are separate.'").

Sanders argues that the length of the delay should weigh heavily against the Government but runs contrary to numerous decisions that have found that the first factor does not weigh heavily against the government and does not violate a defendant's right to a speedy trial beyond the one-year threshold. *E.g., Villarreal*, 613 F.3d at 1350 (holding a ten-year period between indictment and motion to dismiss indictment did not violate speedy trial right); *United States v. Philippe*, 2017 WL 1035518, at *4 (S.D. Fla. Mar. 17, 2017) (finding that the defendant's speedy trial right was not violated after an eleven-year delay).

In *Ingram*, on the other hand, the Eleventh Circuit held that the first *Barker* factor weighed heavily against the government when a two-and-a-half-year pre-indictment delay compounded a two-year post-indictment delay. *Ingram,* 446 F.3d at 1336.

Here, the date of the indictment, September 30, 2021, initiated the speedy trial clock until Sanders' first trial date, March 27, 2023, resulting in a post-indictment delay of 18 months. Sanders asserts that the six-month period between her arrest and the state case and the date of the federal indictment should be included in the delay calculations. [D.E. 37]. However, Sanders' pre-indictment delay should only be "accounted for if it is 'inordinate.'" *Oliva*, 909 F.3d at 1304; *United States v.*

6

*Valiente*, No. 04-20046-CR-UNGARO, 2009 U.S. Dist. LEXIS 132311, at *52 (S.D. Fla. Mar. 6, 2009). Whether delay is inordinate may depend on whether the crime being investigated is complex rather than simple. *United States v. Reyes*, No. 14-20209-CR, 2019 U.S. Dist. LEXIS 81025, at *24 (S.D. Fla. May 14, 2019); *see, e.g., Oliva*, 909 F.3d at 1304–05 (finding two-year pre-indictment delay was not inordinate where the investigation included 25 witnesses located in numerous states, nine suspects, 100 exhibits, search warrants, shoe-tread analysis, and more).

Here, during that six-month period, a search warrant was obtained for the vehicle Sanders had been driving and for the cell phone that was in her possession. The investigation of Sanders' vehicle revealed the personal identifying information of others, well beyond the two known victims from her arrest. The contents in the cell phone took several months to complete, and while investigating this information, Sanders was arrested for another fraud charge. The federal investigation against Sanders included that incident. Ultimately, Sanders' location could not be found through her phone number or vehicle. And at the time she had residences in four different states. Thus, based on these circumstances, the delay was not inordinate because of the complex investigation.

Hence, although the 18-month pre-indictment delay was presumptively prejudicial, it does not weigh heavily against the government. *See Oliva*, 909 F.3d at 1305–06 (concluding the two-year period of delay did not weigh heavily against the government); *Ingram*, 446 F.3d at 1339 (holding a two-and-a-half-year pre-indictment delay combined with a two-year post-indictment delay weighed heavily

7

against the government). We agree with the government that this first *Barker* factor does not tilt heavily in Defendant's favor.

### B. *The reason for the delay.*

The Government next contends that the reasons for the delay in this case were valid and not negligent. [D.E. 43]. A deliberate attempt to delay the trial to hinder the defense and negligence should be weighed heavily against the government. *Barker*, 407 U.S. at 531. However, a missing witness is a valid reason that justifies appropriate delay. *Id.* Over time, the weight a court gives to negligence increases because the presumption of evidentiary prejudice grows. *Doggett*, 505 U.S. at 656–57. Negligence absent actual prejudice must have lasted longer than negligence resulting in prejudice. *Id.* Regardless of the duration, if the defendant fails to show that the delay resulted in "specific prejudice to his defense," there cannot be a Sixth Amendment speedy trial claim. *United States v. Harris*, 376 F.3d 1282, 1290 (11th Cir. 2004).

The Eleventh Circuit has found that a defendant causes the delay if the defendant intentionally evades the Government's efforts to bring him to trial. *Ingram*, 446 F.3d at 1337. When the government is unable to arrest or try a defendant because of the defendant's evasive tactics, the Eleventh Circuit holds a valid reason for delay. *Villarreal*, 612 F.3d at 1351. Moreover, when the defendant is missing, "the government is not required to exhaust all conceivable avenues in finding [her]." *United States v. Machado*, 886 F.3d 1070, 1080 (11th Cir. 2018); *see also United States v. Bagga*, 782 F.2d 1541, 1543 (11th Cir. 1986) ("[government] has

8

a constitutional duty to make a diligent, good-faith effort to locate and apprehend a defendant and bring the defendant to trial."). Put another way, if the government uses reasonable diligence to locate a missing defendant from his indictment to his arrest, then no speedy trial violation exists. *Id.* (citing *Doggett*, 505 U.S. at 656).

The Government claims here that Sanders lived a life hidden to prevent contact with anyone, including her family and law enforcement. Federal investigators contacted Sanders' state attorney once and her family numerous times to inform them of her outstanding warrant and indictment. Although a defendant has no duty to surrender, Sanders' location remained unknown, and she never contacted law enforcement. Further efforts to locate Sanders included phone records and vehicle registration. The subpoenas revealed phone numbers without subscriber information, and Sanders' car registered to others.

Although Sanders' family and attorney advised law enforcement that they would tell Sanders that there was a pending indictment and an active warrant, the government does not know if they ever did in fact do so. The record makes clear that law enforcement made some efforts to locate Sanders from the time of indictment to the time of her ultimate arrest. However, investigators did not try to contact Sanders during her state court appearances on Zoom, which they certainly have could have done so with a modicum of effort.

Based on the applicable standards from the Eleventh Circuit, it is difficult to find that reasonable diligence exists. The Government has certainly not made a showing that Sanders was somehow absenting herself when her state proceedings

were underway. So the reason for delay weighs somewhat in her favor. At the same time, however, we find no evidence that the Government was engaged in any overt bad faith. So its shortcomings only weigh partially against the Government. *United States v. Machado*, 886 F.3d 1070, 1079 (11th Cir. 2018); *United States v. Frederick*, 789 F. App'x 123, 130 (11th Cir. 2019).

C. *The defendant's assertion of the speedy trial right.*

Here, the Government concedes that Sanders timely asserted her speedy trial right. [D.E. 43]. Sanders filed this Motion, thereby asserting her speedy trial right, on September 11, 2023. [D.E. 37]. In asserting her speedy trial right, Sanders omits the six months between the first trial date to the filing of the Motion from her calculations. Throughout the six months, Sanders moved to continue the trial date four times, which supports the Government's contention that the third *Barker* factor does not weigh heavily against the Government. [D.E. 37]. Additionally, Sanders filed a Motion for Extension of Time to file reply in briefing this Motion. [D.E. 44]. *See United States v. Register*, 182 F.3d 820, 828 (11th Cir. 1999) (finding the third *Barker* factor did not weigh heavily against the Government where a defendant asserted his speedy trial right and moved for four continuances before trial). Based on the facts of this case, the third *Barker* factor does not weigh heavily against the Government.

D. *The prejudice to the defendant as a result of the delay.*

Only if the first three factors weigh heavily against the government can the fourth factor, prejudice, be presumed. *Oliva*, 904 F.3d at 916; *see also United States*

*v. Jimenez*, 756 F. App'x 933, 936 (11th Cir. 2018). Otherwise, the defendant can only prevail by showing actual, non-speculative prejudice to the defendant. *United States v. Bibb*, 194 F. App'x 619, 622 (11th Cir. 2006). Having found that only one of the three *Barker* factors weighs slightly in Sanders' favor, while the two other factors do not weigh heavily against the Government, we agree with the Government that Sanders must establish actual prejudice under these circumstances.

A defendant can demonstrate actual prejudice in light of three interests if the first three factors do not weigh heavily against the government: the need to (1) prevent oppressive pretrial incarceration; (2) minimize the defendant's anxiety and concern; and (3) limit the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532. Alleging a witness's faded memories cannot constitute proof of actual prejudice. *United States v. Woodley*, 484 F. App'x 310, 319 (11th Cir. 2012) (citing *United States v. Hayes*, 40 F.3d 362, 366 (11th Cir. 1994)); *see also United States v. Valiente*, 2009 WL 1212198, at *21 (S.D. Fla. May 12, 2009) (finding that a defendant's claim that she is no longer able to obtain potentially helpful documents did not constitute evidence sufficient for actual prejudice).

Because Sanders is required to prove actual prejudice, she asserts that her speedy trial right interests were harmed when she was arbitrarily arrested more than a year after the state court case regarding this conduct concluded. [D.E. 37]. Additionally, Sanders states that any delay has prejudiced her ability to investigate the case and prepare her defense. [D.E. 37].

Yet, contrary to these assertions, Sanders' state case that charged her with essentially the same conduct as the underlying indictment had voluminous discovery. Discovery from Sanders' state case included surveillance videos, depositions, and recorded statements of Sanders admitting to the conduct in this case. Sanders does not rely on any instances of oppressive pretrial incarceration, anxiety, and concern or the possibility that the delay will impair her defense. At best, Sanders' claims are speculation and, therefore not enough to demonstrate actual prejudice she suffered from the delay.

### E. *Rule 48(b) does not warrant relief.*

Rule 48 provides that a court may dismiss an indictment if an unnecessary delay occurs while bringing a defendant to trial. FED. R. CRIM. P. 48(b)(3). The rule "vests much discretion in the trial court, and dismissal is mandatory only if the defendant's constitutional rights have been violated." *United States v. Dunn*, 345 F.3d 1285, 1297 (11th Cir. 2003) (quoting *United States v. Butler*, 792 F.2d 1528, 1533 (11th Cir. 1986). Based on the analysis under the *Barker* factors, the delay before trial did not impede Sanders' Sixth Amendment rights, and the Court is not obligated to grant the motion for dismissal under Rule 48(b). *See Dunn*, 345 F.3d at 1297 (denying dismissal under Rule 48(b) when the court already decided that the delay did not violate defendant's Sixth Amendment rights); *United States v. Philippe*, 2017 WL 1035518, at *7 (S.D. Fla. Mar. 17, 2017) ("Given the foregoing *Barker* analysis and the conclusion reached Defendant's right to a speedy trial has not been violated, the Court similarly declines to dismiss the Indictment on [Rule 48(b) ground[s].") .

## III.     CONCLUSION

Based on the foregoing, the undersigned does hereby **RECOMMEND** that the Motion be **DENIED**.

Pursuant to Local Magistrate Rule 4(b), the parties have seven days from the date of this report to serve and file written objections, if any, with the Honorable Darrin P. Gayles, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein. *R.T.C v Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

DONE AND SUBMITTED in Chambers at Miami, Florida, this 13th day of November 2023.

*/s/ Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge